


UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| EMILY K. LUNA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 5:04-CV-242-C |
| | § | |
| JO ANNE B. BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION**

Plaintiff Emily K. Luna seeks judicial review of a continuing disability review in which it was determined that her receipt of Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) would terminate because her disability had ceased.

The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this case to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. After reviewing the administrative record and the arguments of both parties, this court recommends that the District Court reverse and remand Luna's case to the Commissioner of Social Security.

## I. Administrative Proceedings

Luna was initially determined disabled and entitled to DIB and SSI on January 9, 1986. (Tr. 11, 23.) Her disability related to an aneurysm rupture that resulted in

homonoymous hemianopsia[1] and a seizure disorder. (Tr. 11, 23, 27, 217.) The initial disability finding in 1986 was based on a determination that her impairments met the criteria of Listing 2.04 for loss of visual efficiency. 20 C.F.R. Part 404, subpt. P, app. 1 (2000), *available at* http://www.gpoaccess.gov/cfr/retrieve.html. In the year 2001 the Code of Federal Regulations was revised and after the revisions Luna no longer met the criteria of Listing 2.04 or any other listing. (Tr. 13, 217-19.) After the revision to Listing 2.04, the Commissioner reviewed Luna's disability claim and determined that her medical conditions had improved and that she was able to work. (Tr. 11, 31.)

An Administrative Law Judge (ALJ) upheld the decision to cease benefits. His decision was based on his finding at the fifth step of the sequential disability evaluation process that Luna could perform work identified by a vocational expert. (Tr. 17-18, 20.) The Appeals Council denied Luna's request for review and the ALJ's decision became the Commissioner's final decision. (Tr. 3-5.)

## II. Discussion

At the fifth step of the sequential disability evaluation process the Commissioner carries the burden of showing that, considering the claimant's age, education, and past work experience, he or she can perform other work. *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir.

1

Homonoymous hemianopsia is blindness in either the right or left field of vision of each eye. STEDMAN'S MEDICAL DICTIONARY 798 (27th ed. (2000). A medical expert testified that Luna's aneurysm caused a rupture near nerves that affect sight. (Tr. 217.) He explained that this caused blindness in Luna's left field of vision in both her eyes and that the problem was a "severe visual defect." (Tr. 217-18.)

2001) (citing 20 C.F.R. § 404.1520(f)); *see also Harrell v. Bowen*, 862 F.2d 471, 478 (5th Cir. 1988). In meeting this burden the ALJ may rely upon the expertise of a vocational expert in resolving the issue as to whether the claimant's work skills can be used in other occupations and in identifying the specific occupations in which they may be used. 20 C.F.R. § 404.1566(e) (2004).

In this case, the ALJ solicited testimony from a vocational expert at a hearing. (Tr. 201-25.) As is customary, the ALJ posed a hypothetical question to the vocational expert in which he incorporated Luna's mental and physical limitations and demographic information and inquired whether such an individual would be capable of performing work. (Tr. 222.) Specifically, the ALJ asked:

> [A]ssume the following hypothetical, an individual who at the time in question was 49 years of age, with no past relevant work, with a high school equivalent education. And[,] let's assume this hypothetical person is only capable of light work, simple one-two instructions, no uneven surfaces or stairs on a routine basis, loss of peripheral vision on the left, no unprotected heights or dangerous machinery, no abstract thinking or unfamiliar surroundings, and fairly active supervision. Would . . . there be any work in the national economy such an individual would be capable of performing?

(*Id.*)

The vocational expert identified three jobs in response to the ALJ's hypothetical question: bench assembler, unskilled bench inspector, and sorter for food and textiles. (*Id.*) In response to further questioning, the vocational expert listed the identification numbers in the Dictionary of Occupational Titles (DOT) for these jobs as: 739.687-030, 529.687-114, and 222.687-014. (Tr. 223.) *See* DICOT 739.687-030, 529.687-114, 222.687-014 (Westlaw 2005).

After the hearing but before the ALJ issued his decision, Luna's representative filed a memorandum with the ALJ with attachments of DOT descriptions for the jobs identified by the vocational expert. (Tr. 18, 181-200.) Luna's representative then noted that according to the DOT, the jobs the vocational expert testified as those Luna could perform exceeded the limitations identified by the ALJ in his hypothetical. (Tr. 181-84.) He pointed out that the ALJ restricted his hypothetical to jobs that required only simple one and two step processes and the DOT indicates that such jobs require level one reasoning. Luna's representative then noted that according to the DOT, the jobs identified by the vocational expert require level two reasoning, which requires mental capabilities beyond simple one and two step processes. (*See* Tr. 182-83.) He argued that because the identified jobs required level two reasoning, a person such as Luna who was limited to one or two step instructions could not perform any of those jobs. (Tr. 183.)

Luna's representative was correct. According to the DOT, the jobs identified by the vocational expert -numbers 739.687-030, 529.687-114, and 222.687-014- require the ability to engage level two reasoning. Level two reasoning requires a worker to:

> Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

*See* DICOT 739.687-030, 529.687-114, 222.687-014.

Level one reasoning requires a worker to:

> Apply commonsense understanding to carry out simple one-or-two step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

*See e.g.*, DICOT 363.685-022, 559.685-162, 920.687-074. Thus, whereas the ALJ asked the vocational expert to identify jobs that require only one-or-two step instructions, the vocational expert identified jobs that require a worker to "carry out detailed but uninvolved written or oral instructions." *See id.*

The ALJ acknowledged the conflict between the vocational expert's testimony and the DOT and attempted to salvage the situation by finding, contrary to his hypothetical question, that Luna could perform jobs that require not only a reasoning level of one but also those that require a reasoning level of two. (Tr. 18, 20.) Thus, by implication, he found that Luna was capable of following not only one-or-two step instructions, but that she could also carry out detailed but uninvolved instructions. Based on these findings, he determined that she could perform the jobs identified by the vocational expert. (Tr. 20.)

There is no rule that requires the ALJ to mirror his residual functional capacity finding on the hypothetical question posed to the vocational expert. *See, e.g.*, 20 C.F.R. § 404.1566(e). However, the ALJ's residual functional capacity finding as well as his determination that the claimant can perform jobs that exist in significant numbers in the national economy must be supported by substantial evidence. *Fields v. Bowen*, 805 F.2d 1168, 1171 (5th Cir. 1986). In this case, the ALJ's finding that Luna can perform work that requires a level two reasoning capability is not supported by substantial evidence. Thus, his finding that she can perform work identified by the vocational expert is likewise not supported by substantial evidence. 20 C.F.R. § 404.1561(whether a claimant can perform work depends on his or her residual functional capacity).

For the sake of clarity, level two reasoning requires a worker to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and to deal with problems involving a few concrete variables in or from standardized situations. *See* DICOT 739.687-030, 529.687-114, 222.687-014.

The testimonial and medical evidence in the record does not substantially support a finding that Luna is capable of level two reasoning. Testimony from medical expert Otto Willbanks, M.D., contradicts such a finding, particularly in regard to Luna's ability to carry out detailed instructions. Dr. Willbanks testified in part that Luna would be limited to simple tasks and would be precluded from work that involved detailed instructions, abstract thinking, and unfamiliar circumstances.[2] Luna's own testimony also demonstrates that she had problems following and remembering detailed instructions . (Tr. 211, 213.) Although she acknowledged that she could possibly follow simple one-or-two step instructions, she claimed that her problems with memory and following instructions were the biggest obstacles keeping her from working. (Tr. 206.) She testified about situations at her last job as a motel housekeeper in which she would become confused and forget instructions which would result in problems for her employer. (Tr. 211.) Luna's testimony is corroborated by her former employer and former co-worker who indicated in affidavits that her problems with short-term memory hampered her ability to follow even simple instructions. (Tr. 179, 180.) Medical

---

2

It appears that the ALJ relied almost verbatim on Dr. Willbanks' opinion in fashioning the hypothetical question he directed to the vocational expert. Likewise, his residual functional capacity determination mirrors Dr. Willbanks' opinion with the exception of his finding, which was not recommended by Dr. Willbanks, that Luna was capable of level two reasoning.

evidence in the record also demonstrates that Luna is incapable of following detailed instructions. The psychological testing upon which the ALJ partially relied showed in part that Luna functioned on the low average range intellectually and that she could understand and carry out "short, simple instructions." (Tr. 97.) In addition, one of her physicians indicated that her ability to understand, remember, and carry out detailed instructions fell below competitive standards. (Tr. 177.)

Contrary to the foregoing evidence, the ALJ supported his determination that Luna was capable of level two reasoning by pointing to evidence that she earned a General Educational Development (GED), and that she worked for three months in 2002, and to the results of psychological testing. (Tr. 18.) The fact that Luna earned a GED does not provide substantial evidence to support the ALJ's determination because it is unknown whether she earned her GED with special accommodation. Likewise, substantial evidence is not found from the fact that Luna worked for three months. First, Luna's work was inconsistent and on a part-time basis. (Tr. 180, 204-05.) Second, Luna's employer stated in her affidavit that Luna had short-term memory problems and that she was unable to allow her to work without supervision because she would not follow instructions. (Tr. 180.) Third, the evidence shows that Luna's job was an unsuccessful work attempt and, as such, does not demonstrate an ability to engage in other work. 20 C.F.R. §§ 416.973, 416.974. Finally, the psychological testing upon which the ALJ relied belies a finding that Luna is capable of following and carrying out detailed instructions. Rather, the testing shows that she functions on the low

average range intellectually, that her decision-making ability is less than optimal, and that she can understand and carry out short, simple instructions. (Tr. 97.)

The court should be mindful that the Commissioner, rather than the courts, is charged with resolving conflicts in the evidence. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (citation omitted). On the other hand, the court is charged with determining whether the record, considered in its entirety, substantially supports the Commissioner's decision. *Singletary v. Bowen*, 798 F.2d 818, 822-23 (5th Cir. 1986) (citation omitted). Under the substantial evidence standard, a court must "take into account whatever in the record fairly detracts" from the supporting evidence. *Id.* (quotation omitted).

Substantial evidence is something more than a scintilla but less than a preponderance. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Although it is an ALJ's duty to weigh the evidence, this ALJ ignored substantial evidence in determining that Luna could perform level two reasoning apparently for the sole purpose of resolving the conflict between the DOT and the vocational testimony (Tr. 220.)

Given the evidence that detracts from the ALJ's residual functional capacity determination and the scintilla of evidence he cited to support his residual functional finding, the Commissioner's decision to cease benefits in Luna's case falls below the substantial evidence standard.

**III. Recommendation**

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court reverse and remand the decision of the Commissioner for further administrative proceedings consistent with this Report and Recommendation.

**IV. Right to Object**

Pursuant to 29 U.S.C.§ 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within 10 days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within 10 days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated: May 11, 2005.

NANCY M. KOENIG
United States Magistrate Judge